E-FILED; Montgomery Circuit Court
Docket: 2/14/2023 11:56 AM; Submission: 2/14/2023 11:56 AM

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

DAVID BIRKS
11121 Fen View Lane
Monrovia, Maryland 21770

and

MICHAEL FEDERMAN
2334 Storm Cat Court
Eldersburg, Maryland 21784

*Individually and on behalf of similarly situated persons*

Plaintiffs

v. : Civil Action No.: ____________________

SMALL COMMUNITY SPECIALISTS, L.L.C. d/b/a Select Community Services
4840 Westfields Boulevard, Suite 160
Chantilly, Virginia 20151

**SERVE Resident Agent:**
The Corporation Trust Inc.
2405 York Road, Suite 201
Lutherville-Timonium, Maryland 21093

and

ASSOCIATIONS, INC.
5401 N. Central Expressway, Suite 300
Dallas, Texas 75205

**SERVE Resident Agent:**
CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

and

HOAM VENTURES, INC.
5401 N. Central Expressway, Suite 300
Dallas, Texas 75205

**SERVE Resident Agent:** :
CT Corporation System :
1999 Bryan Street, Suite 900 :
Dallas, Texas 75201 :
:
Defendants :

## CLASS ACTION COMPLAINT

Plaintiffs, DAVID BIRKS and MICHAEL FEDERMAN, on their own behalf and on behalf of similarly situated individuals, by and through undersigned counsel, Joshua Bienstock, Esq., Bienstock Law, LLC, Bradley T. Canter, Esq. and The Law Offices of Ronald S. Canter, LLC, sue Defendants SMALL COMMUNITY SPECIALISTS, L.L.C. d/b/a/ Select Community Services ("SCS"), ASSOCIATIONS, INC. ("Associa"), and HOAM VENTURES, INC. ("HOAM"), for violations of the Maryland Consumer Debt Collection Act (MCDCA), Md. Code, Comm. Law, § 14-201, *et seq*, the Maryland Collection Agency Licensing Act (MCALA), Md. Code, Bus. Reg. § 7-101, *et seq*., the Maryland Consumer Protection Act (MCPA), MD. Code, Comm. Law, § 13-301, *et seq*., and for common law state claims, as grounds states as follows:

## JURISDICTION

1. This Court has personal jurisdiction over the Defendants pursuant to Md. Code, Cts. & Jud. Proc., § 6-103(b)(1) and (b)(3).

2. Venue is proper in this Court pursuant to Md. Code, Cts. & Jud. Proc., § 6-201 because Defendants carry on a regular business in Montgomery County in the collection of debts from homeowners, including from Plaintiff David Birks while he resided in Montgomery County.

## INTRODUCTION

3. SCS, Associa, and HOAM (collectively the "Defendants") are engaged in the business of directly and indirectly collecting homeowners' associations dues and assessments[1] from Maryland

[1] Homeowners association and condominium association dues and assessments will be referred to as "HOA Dues".

residential homeowners, including Plaintiffs and the class members, on behalf of homeowners' associations and condominium associations. Defendants add to homeowners' debt burden by charging extra fees to pay for their "services" in collecting debt from the consumers.

4. These fees, called "convenience fees" or "pay-to-pay fees". Are illegal. These fees should never have been charged, and the fees that Defendants collected should be returned to Plaintiff and the class members.

5. For example, Defendants routinely charge and collect a "convenience fee" from Plaintiffs and the class members for collecting HOA Dues using methods of payment including ACH, credit card, or debit card ("Pay-to-Pay Fees"). Defendant's Pay-to-Pay Fees are not expressly authorized by the government documents or by-laws creating the debts being collected, nor are they permitted by applicable law. As such, the Pay-to-Pay Fees are unlawful under the MCDCA. In turn, Defendants' violation of the MCDCA is a *per se* violation of the MCPA.

6. Not only are the Pay-to-Pay Fees illegal, but Defendants cannot charge any fees for debt collection in Maryland because they are not licensed as a collection agency. MCALA requires all collection agencies to be licensed and prohibits unlicensed debt collection activity. Defendants' lack of licensure is a *per se* violation of the MCDCA and MCPA.

7. As part of its scheme to extract illegal payments from Maryland homeowners, Associa uses its subsidiaries, including SCS. Associa is a national company providing homeowner association and property management services. It has local subsidiaries in over thirty (30) states and over 225 branches that serve over 6 million homeowners. SCS is one of Associa's subsidiaries that provides homeowner association and property management services in the State of Maryland.

8. SCS contracts with homeowners' associations and condominium associations to collect HOA Dues. As part of its collection practices, SCS directed Plaintiffs and other class members to

make electronic payments over a web based platform called "TownSq". When Plaintiffs or other class members made payments by ACH, credit card, or debit card on the TownSq application, Plaintiffs and other class members were charged an illegal "convenience fee".

9. Associa owned and operated the TownSq app until around April 2022 when it was sold and/or transferred to HOAM.

10. Upon information and belief, HOAM was an entity created less than a month prior to the sale and/or transfer of the TownSq app. HOAM is located at the same Texas address as Associa. HOAM's purpose is to purchase, acquire, and hold various technologies that Associa and its subsidiaries (including SCS) use in their property management business.

11. The Maryland General Assembly enacted the MCDCA, the MCPA, and the MCALA to protect Maryland consumers like Plaintiffs and the class members. The Financial Consumer Protection Act of 2018 amended the MCDCA to bar debt collectors like Defendants from collecting add-on fees that are not expressly authorized in the agreement creating the debt or permitted by statute. At the same time, the legislature made it a *per se* violation of the MCDCA to act as a collection agency without a MCALA license.

12. Defendants have ignored the mandates of the MCDCA, the MCPA, and the MCALA. They have flouted the Legislature's attempt to end their harmful and abusive collection practices and have chosen to continue their unlawful practices that those laws were designed to stop.

## PARTIES

13. Defendant SCS is a Virginia limited liability company with its principal place of business in the State of Virginia. SCS is a wholly owned subsidiary of Defendant Associa. SCS is duly licensed to do business in the State of Maryland, and in fact does business in this state, but does not hold a Maryland collection agency license.

14. Defendant Associa is a Texas corporation with its principal place of business in the State of Texas. Associa is the parent corporation for SCS. Associa owned and operated the TownSq application and profited from the illegal Pay-to-Pay Fees until around April 2022 when it sold and/or transferred the TownSq application to HOAM.

15. Defendant HOAM is a Texas corporation with its principal place of business in the State of Texas. HOAM has owned and operated the TownSq application since it purchased and/or was transferred the same from Associa around April 2022.

16. Plaintiff, David Birks (hereinafter "Birks"), is a resident of Frederick County, Maryland. He is over the age of 18. Birks owned real property located at 310A Cross Green Street, Gaithersburg, Maryland 20878 ("Birks Property") from 2014 until November 23, 2021. The Birks Property is located within the Lakelands Community Association ("LCA") and is part of the Council of Unit Owners of Cross Green Condominium at Lakelands ("Cross Green Association"). SCS has been contracted to provide property management services for Cross Green Association, and at all relevant times was responsible for the collection of HOA Dues for homeowners of Cross Green, including Birks.

17. Plaintiff, Michael Federman ("Federman"), is a resident of Carroll County, Maryland. He is over the age of 18. Federman purchased and has owned real property located at 2334 Storm Cat Court, Eldersburg, Maryland 21784 ("Federman Property") since June 2021. The Federman Property is located within the Estates at Liberty Reservoir Homeowners Association, Inc. ("Estates at Liberty Reservoir"). SCS has been contracted to provide property management services for Estates at Liberty Reservoir, and at all relevant times was responsible for the collection of HOA Dues for homeowners of Estates at Liberty Reservoir, including Federman.

18. Plaintiffs bring certain claims on behalf of three classes. The "SCS Class" consists of:

> All consumers in Maryland who within three (3) years of the filing of this Complaint (a) paid a fee or charge, (b) imposed or collected by SCS, (c) for making a payment arising from a homeowners association or condominium association debt, and (d) where the fee or charge was not expressly authorized by any agreement governing the debt or permitted by law.

19. The "Associa Class" consists of:

> All consumers in Maryland who within three (3) years of the filing of this Complaint (a) paid a fee or charge, (b) imposed or collected by Associa, (c) for making a payment arising from a homeowners association or condominium association debt, and (d) where the fee or charge was not expressly authorized by any agreement governing the debt or permitted by law.

20. The "HOAM Class" consists of:

> All consumers in Maryland who within three (3) years of the filing of this Complaint (a) paid a fee or charge, (b) imposed or collected by HOAM, (c) for making a payment arising from a homeowners association or condominium association debt, and (d) where the fee or charge was not expressly authorized by any agreement governing the debt or permitted by law.

21. Birks qualifies as a member of the SCS Class and Associa Class, and proposes to be appointed by the Court as the named Plaintiff for those two Classes.

22. Federman qualifies as a member of the SCS Class, Associa Class, and HOAM Class, and proposed to be appointed by the Court as the named Plaintiff for those three Classes.

23. Excluded from the Classes are any persons who are (a) an employee or independent contractor of Defendants, (b) a relative of an employee or independent contractor of Defendants, or (c) an employee of the Court where this action is pending.

24. The Class definition may be amended or modified as needed.

25. The particular members of the Classes are capable of being described without difficult managerial or administrative problems. The members of the Classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and

agents. Defendants are required to maintain this information for the entire class period. *See, e.g.*, Md. Code Regs. 09.03.06.04. Defendants do maintain such records in electronic form and can identify all Class members and the convenience fees collected from them by date(s) during the Class period.

26. The Class members are sufficiently numerous and exceed more than one hundred persons (likely into the thousands), such that individual joinder of all members is impractical. This allegation is based on the public record of the number of individual homeowners in the Cross Green Association and Estates at Liberty Reservoir alone and the TownSq application website that boasts it has more than 6 million users nationwide.

## MAINTAINABILITY OF THE ACTION

27. There are questions of law and fact common to each Class which predominate over any questions affecting only individual Class members.

28. The common questions of law or fact for the SCS Class include, but are not limited to:

a. Whether SCS qualify as "collectors" as that term is defined in the MCDCA;

b. Whether SCS is entitled to collect convenience fees on the HOA Dues for accepting whole or partial payments from the Class members;

c. Whether SCS's use of a click-through, clickwrap, or browsewrap system to create a purported contract with the Class (separate and apart from the written documents governing the debts), is unreasonable and unenforceable since they purport to permit SCS to violate the public policies of Maryland and various statutory, regulatory, and common law bars to the convenience fees and governing documents;

d. Whether the governing documents related to the Class members' debts expressly authorize the imposition and collection of convenience fees by SCS;

e. Whether Maryland law expressly authorizes the imposition and collection of convenience fees by SCS;

f. Whether Maryland law and regulations governing SCS expressly prohibit the imposition and collection of convenience fees by SCS;

g. Whether SCS was required to hold a Maryland collection agency license when collecting HOA Dues from the Class;

h. Whether SCS conduct, directly or indirectly, in imposing and collecting convenience fees from the Class members violated the MCDCA, MCPA, and MCALA; and

i. Whether the Class members are entitled to the convenience fees collected from them as actual damages and an award of reasonable attorneys' fees and costs pursuant to the MCDCA and MCPA.

29. The common questions of law or fact for the Associa Class include, but are not limited to:

a. Whether Associa qualifies as a "collector" as that term is defined in the MCDCA;

b. Whether Associa is entitled to collect convenience fees on the HOA Dues for accepting whole or partial payments from the Class members;

c. Whether Associa's use of a click-through, clickwrap, or browsewrap system to create a purported contract with the Class (separate and apart from the written documents governing the debts), is unreasonable and unenforceable since they purport to permit Associa to violate the public policies of Maryland and various statutory, regulatory, and common law bars to the convenience fees and governing documents;

d. Whether the governing documents related to the Class members' debts expressly authorize the imposition and collection of convenience fees by Associa;

e. Whether Maryland law expressly authorizes the imposition and collection of convenience fees by Associa;

f. Whether Maryland law and regulations governing Associa expressly prohibit the imposition and collection of convenience fees by Associa;

g. Whether Associa is required to hold a Maryland collection agency license when collecting HOA Dues from the Class;

h. Whether Associa's conduct, directly or indirectly, in imposing and collecting convenience fees from the Class members violated the MCDCA, MCPA, and MCALA; and

i. Whether the Class members are entitled to the convenience fees collected from them as actual damages and an award of reasonable attorneys' fees and costs pursuant to the MCDCA and MCPA.

30. The common questions of law or fact for the HOAM Class include, but are not limited to:

a. Whether HOAM qualifies as a "collector" as that term is defined in the MCDCA;

b. Whether HOAM is entitled to collect convenience fees on the HOA Dues for accepting whole or partial payments from the Class members;

c. Whether HOAM's use of a click-through, clickwrap, or browsewrap system to create a purported contract with the Class (separate and apart from the written documents governing the debts), is unreasonable and unenforceable since they purport to permit HOAM to violate the public policies of Maryland and various statutory, regulatory, and common law bars to the convenience fees and governing documents;

d. Whether the governing documents related to the Class members' debts expressly authorize the imposition and collection of convenience fees by HOAM;

e. Whether Maryland law expressly authorizes the imposition and collection of convenience fees by HOAM;

f. Whether Maryland law and regulations governing HOAM expressly prohibit the imposition and collection of convenience fees by HOAM;

g. Whether HOAM is required to hold a Maryland collection agency license when collecting HOA Dues from the Class;

h. Whether HOAM's conduct, directly or indirectly, in imposing and collecting convenience fees from the Class members violated the MCDCA, MCPA, and MCALA; and

i. Whether the Class members are entitled to the convenience fees collected from them as actual damages and an award of reasonable attorneys' fees and costs pursuant to the MCDCA and MCPA.

31. The claims of the Plaintiffs as a representative party are typical of, i.e. similar to, the claims of the Classes, since they are based on and arise out of identical facts constituting wrongful conduct of Defendants. In fact, the wrongs alleged against Defendants by the Classes and the relief sought by Plaintiffs and the Classes are identical.

32. Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs are similarly situated with, and have suffered similar injuries, to the Classes they propose to represent. Plaintiffs have also retained experienced counsel. Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or otherwise adverse to the interest of the Class members.

33. This action is properly maintained as a class action under Maryland Rule 2-231(b)(1)(A) in that separate actions by or against individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendants.

34. This action is also properly maintainable as a class action under Maryland Rule 2-231(b)(1)(B) in that separate actions by individual members of the Classes would create a risk of adjudication with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of other members not a party to the adjudications, or would substantially impair or impede their ability to protect themselves.

35. This action also is properly maintained as a class action under Maryland Rule 2-231(b)(2) in that Defendants have acted or refused to act as hereinafter more specifically alleged, on grounds which are generally applicable to the Classes, and have by reason of such conduct, made appropriate final injunctive relief, and corresponding declaratory relief, with respect to the Classes as sought in this action.

36. This action is also properly maintained under Maryland Rule 2-231(b)(3) in that questions of law or fact common to members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy between the Classes and Defendants.

37. Any plausible defense by Defendants (which are denied) would be typical or identical for each of the members of the Classes and would be based on the same legal and factual theories.

38. A class action will cause an orderly and expeditious administration of claims by the members of the Classes and economies of time, effort, and expenses will provide uniformity of decisions.

39. The only individual questions concern the identification of the Class members. This information can be determined by a ministerial examination of Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

40. The Class members have suffered actual damages, losses, and harms as those sustained by Plaintiffs.

## DESIRABILITY OF CLASS ACTION

41. The commonality of issues of law and fact, as well as the relatively limited liability to each class member, substantially diminishes the interest of members of the Classes in individually controlling the prosecution of separate actions. Many of the members of Plaintiff's class are unaware of their rights to prosecute a claim against Defendants. There has been little litigation already commenced by members of the Classes to determine the questions presented herein. It is desirable that the claims be concentrated in this forum due to the fact that many witnesses reside in Maryland, and many people who will be testifying in this case reside in the State of Maryland. This class action can be managed without undue difficulty because Plaintiffs will vigorously pursue the interests of the class.

## BACKGROUND FACTS

42. In 2014 and until November 2021, Birks purchased and owned the Birks Property entirely for personal, family, and consumer purposes.

43. The Birks Property was governed by LCA and Cross Green Association. The Property was subject to the Cross Green Association's governing documents.

44. During his ownership of the Property, Cross Green Association assessed a monthly fee of $288.00 per month. This fee was in addition to the monthly due to LCA.

45. SCS was retained by Cross Green Association to collect all monthly HOA Dues from the homeowners, including Birks.

46. The governing documents of Cross Green Association which create the obligation of Birks to pay the monthly dues, and Maryland law, is devoid of any authorization to impose a convenience fee for payments made over the internet, including through the TownSq application.

47. SCS, nor its principal Cross Green Association, ever executed and returned to Birks any agreement it had with him authorizing the imposition and collection of convenience fees in relation to the collection of his HOA Dues.

48. SCS collected the monthly HOA Dues from Birks through an online payment portal *via* TownSq. Birks continuously paid his HOA Dues through TownSq wherein a convenience fee was imposed and collected.

49. The illegally collected convenience fee was retained by Associa and/or HOAM (during the respective time of ownership of TownSq).

50. For each monthly HOA Dues payment over the internet, Birks was charged the Cross Green Association monthly dues, plus a convenience fee. The App then applied a misleading "Cash Discount" as Birks pays the amount *via* electronic debit from a bank account rather than by credit card. In total, a net convenience fee of $2.95 was charged each month to Birks.

51. In June 2021, Federman purchased the Federman Property entirely for personal, family, and consumer purposes.

52. The Federman Property is governed by Estates at Liberty Reservoir. The Property is subject to the Estates at Liberty Reservoir's governing documents.

53. Since his ownership of the Federman Property, Estates at Liberty Reservoir has continuously assessed a monthly fee of $40.00 per month.

54. SCS was retained by Estates at Liberty Reservoir to collect all monthly HOA Dues from the homeowners, including Federman.

55. The governing documents of Estates at Liberty Reservoir which create the obligation of Federman to pay the monthly HOA Dues, and Maryland law, is devoid of any authorization to impose a convenience fee for payments made over the internet, including through the TownSq application.

56. SCS, nor its principal Estates at Liberty Reservoir, ever executed and returned to Federman any agreement it had with him authorizing the imposition and collection of convenience fees in relation to the collection of his HOA Dues.

57. SCS collected the monthly HOA Dues from Federman through an online payment portal *via* TownSq. Federman continuously paid his HOA Dues through TownSq wherein a convenience fee was imposed and collected.

58. The illegally collected convenience fee was retained by Associa and/or HOAM (during the respective time of ownership of TownSq).

59. For each monthly HOA Dues payment over the internet, Federman was charged the Estates at Liberty Reservoir monthly dues, plus a $4.35 convenience fee (representing a 10.875% increase). The App then applied a misleading "Cash Discount" of $1.40 as Federman pays the amount *via* electronic debit from a bank account rather than by credit card. In total, a net convenience fee of $2.95 was charged each month to Federman.

60. For those homeowners paying by credit or debit card, the total convenience fee included the unlawful $2.95 charge plus an electronic payment fee for paying by credit or debit card. While the electronic payment fee may be permissible under the Maryland Homeowners Association Act, Md. Code, Real Property, § 11B-114 (if the amount charged is actually incurred by the

Defendants), the $2.95 convenience fee, applied to all consumers no matter the method of payment, is not permitted by agreement or law.

61. Plaintiffs and the class members have been damaged and sustained losses as a proximate cause of Defendants' improper, unfair, and/or deceptive practices in relation to the collection of the HOA Dues, including payment and collection of convenience fees not permitted as a matter of law or authorized by the homeowners association or condominium association governing documents.

62. In this action, Defendants, by themselves and through their agents, have utilized a method of collection which imposed certain "convenience fees" to Plaintiffs' HOA Dues (and others in the putative class) for accepting monthly HOA Dues payments through the TownSq application. These convenience fees to accept payments of consumer debts are not a permissible method of collection by the governing documents of the applicable homeowners association and by Maryland law.

63. The convenience fees are an unlawful profit center imposed and collected by Defendants and its agents, and are not simply pass-through costs to Plaintiffs and the members of the putative class. Even if the fees were authorized, which they are not, the sums collected are significantly in excess of Defendants' actual costs to accept dues over the internet.

64. In *Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370 (4th Cir. 2022), the United States Court of Appeals for the Fourth Circuit held that Maryland law prohibited the collection of a convenience fee for payment of a consumer debt unless the imposition of the convenience fee was authorized by agreement or law.

65. Recognizing the decision in *Carrington*, on May 12, 2022 the Maryland Commission of Financial Regulation issued an advisory titled "Notice to Lenders and Servicers: Court Decision

on So-Called 'Convenience Fees'". Recognizing that the *Carrington* decision was in connection with a mortgage debt, the Commissioner noted that "while loan payment 'convenience' fees may historically relate to mortgage loans, this decision applies to all lenders and servicers of all extensions of consumer credit made to Maryland residents and "the conclusions reached in the *Carrington* decision extend to all lenders and services, as well as any other person seeking to collect a consumer debt."

66. The Commission advised that "[l]enders and servicers should commence a review of their records to determine whether any improper fees have previously been assessed and undertake appropriate reimbursements to affected borrowers."

67. As a result of Defendants' practices and methods of collection and consistent with the law as stated in *Carrington*, Plaintiffs and the putative class have sustained damages and losses since their rights under Maryland law have been disregarded by Defendants. These damages include the amount of so-called convenience fees imposed and collected by Defendants which it has no right to impose and collect. Plaintiffs and the putative class are entitled to actual and statutory damages, as well as costs and reasonable attorneys' fees awarded by the Court. Further, Defendants should be enjoined from further collection of any convenience fees not authorized by Maryland law or the governing documents creating the debt obligation.

## COUNT ONE - DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF (Individual and Class Claims)

68. Plaintiff adopts by reference the allegations of ¶¶ 1 – 67 of the Complaint as if herein fully set forth.

69. This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity

with respect to the rights, status and legal relations regarding Plaintiff and members of the Class and Defendants, and under MCALA.

70. Cross Green Association and Estates at Liberty Reservoir retained SCS to collect Plaintiffs and the class members HOA Dues, which are incurred monthly. SCS, presumably as directed by Associa, directed Plaintiffs and other class members to the TownSq application, owned at various times by Associa and HOAM, to make those HOA Dues payments.

71. Plaintiffs and the Class members seek a declaration that Defendants are not entitled to impose and collect any fee incidental to their HOA Dues because neither SCS nor Associa nor HOAM are licensed as a collection agency under MCALA and since such a convenience fee is neither authorized by the governing documents authorizing the HOA dues nor under Maryland law.

72. Plaintiffs take the position that Defendants were each required to be licensed as a collection agency under MCALA at the time they engaged in the activity alleged in this Complaint.

73. This presents an actual, judiciable controversy between the parties relating to the actions by Defendants in their dealings with Plaintiff and members of the Classes, relating to the application of MCALA to those actions, and relating to the legitimacy of charges assessed as a result of those actions. In particular, Defendants have each acted as a collection agency with respect to Class Members. Defendants have also imposed and/or collected from Plaintiffs and class members convenience fees which are illegal Pay-to-Pay fees.

74. Plaintiffs and class members have a right to be free from the charges assessed against them by Defendants and to be free from the consequences of Defendants' unlawful activities as collection agencies when none of them have the required collection agency license.

75. A declaration of the rights of the parties is necessary to resolve the parties' respective rights under the MCALA and the MCDCA. For example, Plaintiff and the Classes are entitled to a declaration that Defendants are collection agencies, which must be licensed under MCALA, and which may not charge fees for unlicensed collection agency activity to, or retain such fees from, Plaintiff and members of the Classes.

76. Defendants should be enjoined from imposing and attempting to collect a convenience fee from Plaintiffs and the Class members it collects HOA dues through the App until they obtain the requisite collection agency license and when such fees are permitted by the governing documents of the associations or by Maryland law.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Honorable Court order appropriate declaratory and injunctive relief against Defendants to prevent further damage to the Classes through violations of Maryland law for collecting unlawful convenience fees.

**COUNT TWO - VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT, MD. CODE ANN., COMM. LAW, ¶¶ 14-202(8), (10) and (11)**
**(Individual and Class Claims)**

77. Plaintiff adopt by reference the allegations of ¶¶ 1-76 of the Complaint as if herein fully set forth.

78. Defendants have acted as collectors, as defined under the Maryland Consumer Debt Collection Act (MCDCA), Md. Code, Comm. Law, § 14-201(b), by attempting to collect convenience fees from Plaintiffs and the class members which were incidental to their consumer, HOA Dues.

79. In collecting and attempting to collect on the alleged debts of Plaintiffs and members of the Classes, including the unlawful convenience fees, Defendants violated section 14-202 of the MCDCA.

80. Among other things, Defendants each violated section 14-202(8) and (11) of the MCDCA when each claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist. Defendants each claimed, attempted and threatened to enforce a right to act as a collection agency and collect a fee for doing so in their dealings with Plaintiffs and members of the Classes, when neither had a right to act as a collection agency, because neither were licensed as a collection agency. Defendants each knew that they were not licensed as a collection agency in Maryland. Defendants each knew that they had no right to act as an unlicensed collection agency in their dealings with Plaintiffs and members of the Classes. Defendants each knew that they were acting as an unlicensed collection agency in their dealings with Plaintiffs and the Class.

81. In addition, Defendants each violated the MCDCA § 14-202(10) when they engaged in unlicensed debt collection activity directed at Plaintiffs and each member of the Classes in violation of the MCALA, as described in this Complaint.

82. Furthermore, Defendants violated the MCDCA § 14-202(11) when it charged and collected from Plaintiff and each Class Member one or more Pay-to-Pay Fees which were not expressly authorized by the agreement creating the debt or permitted by law.

83. Defendants are aware, or should have been aware, of the Federal and State laws governing its activities but recklessly disregarded those laws and duties to the detriment of Plaintiffs and the class members.

84. Defendants used their methods of collection to collect, while unlicensed, unlawful convenience fees for accepting payment of HOA Dues through TownSq from Plaintiffs and the

class members in violation of the terms of the documents governing the debts and Maryland law which do not authorize such fees.

85. By imposing such unlawful convenience fees and attempting to collect such unlawful charges, all while fully knowing the law and being unlicensed, Defendants have engaged in collection activity that violates the MCALA and Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., and thus deemed a violation of the MCDCA. § 14-202(10) and (11).

86. Defendants also violated section 14-202(8) of the MCDCA by requiring Plaintiffs and the class members to pay a convenience fee for making a payment towards HOA Dues through the TownSq application since they had no right to collect those charges.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Court award its actual damages for Defendants' violations of the MCDCA, §§ 14-202(8), (10), and (11) in the total sum in excess of $75,000.00 (on an aggregated basis for Plaintiffs and the class members), plus costs and all other damages suffered by Plaintiffs and the Classes.

**COUNT THREE - VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**(Individual and Class Claims)**

87. Plaintiffs adopt by reference the allegations of ¶¶ 1-86 of the Complaint as if herein fully set forth.

88. Defendants' violations of the MCDCA are *per se* violations of the MCPA. *See*, Md. Code, Comm. Law, § 13-301(14)(iii).

89. As such, Plaintiffs and the Class Members are entitled to damages as allowed under the MCPA.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Court award its actual damages for Defendants' violations of the MCPA, § 13-301, *et seq.* in the total sum in excess of $75,000.00 (on an aggregated basis for Plaintiffs and the class members), together with reasonable attorneys' fees as permitted by the MCPA, § 13-301(14)(iii) and 13-408(b), plus costs and all other damages suffered by Plaintiffs and members of the Classes.

**COUNT FOUR - MONEY HAD AND RECEIVED**
**(Individual and Class Claims)**

90. Plaintiffs adopt by reference the allegations of ¶¶ 1-89 of the Complaint as if herein fully set forth.

91. Defendants each acted as a collection agency in their dealings with Plaintiffs and members of the Classes, when each lacked the license required to act as a collection agency, and yet imposed and collected illegal charges to Plaintiffs and the members of the Classes for that activity.

92. Defendants charged Plaintiffs and each member of the Classes one or more Pay-to-Pay Fees, which are illegal under the MCDCA.

93. These actions of Defendants were and are illegal.

94. Any otherwise existing basis under which Defendants would be entitled to any form of payment or compensation of any kind for acting as a collection agency, when none of the Defendants had a license to act as a collection agency, is nugatory and ineffective as Defendants' collection agency activities in Maryland were in violation of Maryland law.

95. As a result of SCS's actions, SCS collected money, resulting from the charges which it unlawfully imposed on Plaintiffs and Class Members, to which it had no legal or equitable right.

96. SCS, for example, imposed illegal charges denominated as a "convenience fee" to be collected against Plaintiffs and other class members.

97. As a result of the actions alleged above, SCS obtained possession of money which, in equity and good conscience, cannot be allowed to retain and should return to Plaintiff and other members of the SCS Class.

98. As a result of Associa's actions, Associa collected and retained money, resulting from the charges which were unlawfully assessed to Plaintiffs and members of the Classes, to which it had no legal or equitable right.

99. Associa, for example, collected and retained Pay-to-Pay Fees which were illegal, and which were paid for Associa's unlicensed and unlawful actions as a collection agency.

100. As a result of the actions alleged above, Associa obtained possession of money which, in equity and good conscience, it cannot be allowed to retain and should return to Plaintiffs and other members of the Associa Class.

101. As a result of HOAM's actions, HOAM collected and retained money, resulting from the charges which were unlawfully assessed to Plaintiffs and members of the Classes, to which it had no legal or equitable right.

102. HOAM, for example, collected and retained Pay-to-Pay Fees which were illegal, and which were paid for HOAM's unlicensed and unlawful actions as a collection agency.

103. As a result of the actions alleged above, HOAM obtained possession of money which, in equity and good conscience, it cannot be allowed to retain and should return to Plaintiffs and other members of the HOAM Class.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Court enter a judgment in favor of Plaintiffs and the class members, and against Defendants, in the total sum in excess of $75,000.00 (on an aggregated basis for Plaintiffs and the class members), plus costs and all other damages suffered by Plaintiffs and members of the Classes.

## COUNT FIVE - NEGLIGENCE
## (Individual and Class Claims)

104. Plaintiffs adopt by reference the allegations of ¶¶ 1-103 of the Complaint as if herein fully set forth.

105. Defendants each had a duty to Plaintiffs and members of the Classes to not act as a collection agency, when each did not have the license to act as a collection agency required under Maryland law.

106. In addition, Defendants had a duty to not charge Pay-to-Pay Fees which are illegal under Maryland law because they are not expressly authorized by the agreement creating the debt or permitted by law.

107. Defendants breached their duties of care to Plaintiffs and members of the Classes when they acted as collection agencies in their dealings with members of the Classes when they did not have the license to do so. They further breached its duties of care to Plaintiffs and members of the Classes when it charged Pay-to-Pay Fees which are illegal.

108. Plaintiffs and members of the Classes have suffered actual losses and damages as the proximate result of the breaches of duty of Defendants. Among other things, Plaintiffs and members of the Classes have been assessed and forced to pay amounts for Convenience Fees and

illegal Pay-to-Pay Fees to Defendants for their unlawful actions as a collection agency. These damages, losses and injuries were proximately caused by the breaches of duty of Defendants, as Plaintiffs and other members of the Classes would not have paid convenience fees or Pay-to-Pay fees to Defendants for their unlicensed and unauthorized actions absent Defendants breaches of duty.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Court enter a judgment in favor of Plaintiffs and the class members, and against Defendants, in the total sum in excess of $75,000.00 (on an aggregated basis for Plaintiffs and the class members), plus costs and all other damages suffered by Plaintiffs and members of the Classes.

## COUNT SIX - UNJUST ENRICHMENT
## (Individual and Class Claims)

109. Plaintiffs adopt by reference the allegations of ¶¶ 1-108 of the Complaint as if herein fully set forth.

110. Plaintiffs and members of the Classes conferred a benefit upon Defendants by paying convenience fees and Pay-to-Pay fees in collection of their HOA dues, amounts of which Defendants took a portion of the payment.

111. Defendants knew of the benefit conferred upon them by Plaintiffs and the members of the Classes. Defendants affirmatively demanded payment of the convenience fees and Pay-to-Pay fees from Plaintiffs and members of the Classes.

112. It would be inequitable for Defendants to retain the amounts that they have received in connection with the collection activity directed to Plaintiffs and the members of the Classes as

those amounts were paid to Defendants as a result of its unlawful activity described in this Complaint, and were not legally owed to Defendants and could not be legally be collected by Defendants.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Court enter a judgment in favor of Plaintiffs and the class members, and against Defendants, in the total sum in excess of $75,000.00 (on an aggregated basis for Plaintiffs and the class members), plus costs and all other damages suffered by Plaintiffs and members of the Classes.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all counts for which a right to trial by jury is allowed.

______________________________
**DAVID BIRKS**

______________________________
**MICHAEL FEDERMAN**

**I DO SOLEMNLY DECLARE, UNDER THE PENALTIES OF PERJURY, THAT THE CONTENTS OF THE FORGOING DOCUMENT ARE TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.**

______________________________
**DAVID BIRKS**

______________________________
**MICHAEL FEDERMAN**

those amounts were paid to Defendants as a result of its unlawful activity described in this Complaint, and were not legally owed to Defendants and could not be legally be collected by Defendants.

WHEREFORE:

A. Plaintiffs and the class members respectfully request this Court to certify this action as a class action and set this matter for trial; and

B. Plaintiffs and the class members respectfully request that this Court enter a judgment in favor of Plaintiffs and the class members, and against Defendants, in the total sum in excess of $75,000.00 (on an aggregated basis for Plaintiffs and the class members), plus costs and all other damages suffered by Plaintiffs and members of the Classes.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all counts for which a right to trial by jury is allowed.

______________________________
**DAVID BIRKS**

______________________________
**MICHAEL FEDERMAN**

**I DO SOLEMNLY DECLARE, UNDER THE PENALTIES OF PERJURY, THAT THE CONTENTS OF THE FORGOING DOCUMENT ARE TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.**

______________________________
**DAVID BIRKS**

______________________________
**MICHAEL FEDERMAN**

Respectfully submitted,

BIENSTOCK LAW, LLC

By: /s/ Joshua I. Bienstock
Joshua I. Bienstock, Esq.
401 East Jefferson Street
Suite 208
Rockville, MD 20850
301-251-1600
josh@bienstocklegal.com
CPF #: 1312170081

THE LAW OFFICES OF RONALD S. CANTER, LLC

By: /s/ Bradley T. Canter
Bradley T. Canter, Esq.
200A Monroe Street, Suite 104
Rockville, MD 20850
Telephone: (301) 424-7490
Facsimile: (301) 424-7470
bcanter@roncanterllc.com
CPF #: 1312170129