IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID BIRKS ET AL., | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 23-837-BAH |
| SMALL COMMUNITY SPECIALISTS, L.L.C., ET AL., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs David Birks and Michael Federman, individually and on behalf of a class (collectively "Plaintiffs"), brought suit against Small Community Specialists, LLC, Associations, Inc., and Hoam Ventures, Inc. (collectively "Defendants"), in the Circuit Court for Montgomery County alleging that Defendants' practice of charging "pay-to-pay" fees to Maryland consumers that pay their homeowner's association and condominium association dues and assessments online was a violation of the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA"), in part because Defendants were not properly licensed under the Maryland Collection Agency Licensing Act ("MCALA"). *See* ECF 1. Defendants removed the action to this Court. *See id.* The parties settled, and the Court granted Plaintiffs' motion for final approval of the class action settlement on December 10, 2024. *See* ECF 31.

Peace between the parties was apparently only temporary as the Court is now tasked with deciding Plaintiff's motion for an order to show cause why the Defendants should not be held in contempt of court for failing to comply with the Court's order approving the settlement. ECF 32. Defendants filed an opposition, ECF 33, and Plaintiffs filed a reply, ECF 34. All filings include

memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

I. **BACKGROUND**

Plaintiffs' class action lawsuit alleged that Defendants charged and collected millions of dollars in "pay-to-pay" fees[2] from Maryland homeowners in addition to their regular homeowner's association and condominium association dues and assessments in violation of the MCDCA, the MCPA, and the common law. ECF 32-1, at 1; ECF 5, at 2–3 ¶¶ 3–6. The MCDCA prohibits unlicensed debt collection activity in violation of MCALA. *See* Md. Code Ann., Comm. Law § 14-202(10) ("In collecting or attempting to collect an alleged debt a collector may not . . . [e]ngage in unlicensed debt collection activity in violation of the Maryland Collection Agency Licensing Act."). Plaintiffs alleged, in part, that the collection of the fees violated Maryland state law because Defendants were not licensed under MCALA. *See, e.g.*, ECF 5, at 3 ¶ 6.

On December 10, 2024, this Court entered an Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement ("Settlement Order"). *See* ECF 31. In addition to a monetary payment to the settlement class, the Settlement Order included injunctive relief. *See id.* at 3; *see also id.* at 12 ¶ 10 ("[I]n addition to the Gross Settlement Fund, the Settlement includes injunctive relief that, when taken into account, is an additional benefit to the Settlement Class."). In relevant part, the Settlement Order requires Defendants to ensure that "all entities owned by Defendants that communicate directly with Maryland consumers regarding payment of their homeowner's

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] A "pay-to-pay" fee, also commonly referred to as a "convenience" fee, is a charge imposed on a consumer who uses a specific method of payment, such as a credit card. ECF 5, at 3 ¶¶ 4–5.

association and condominium association fees and assessments are licensed under the Maryland Collection Agency Licensing Act." *Id.* at 3.

Plaintiffs allege that Defendants are in violation of that provision of the Settlement Order. *See* ECF 32-1, at 2. "Since January 1, 2025, and continuing to today," Plaintiffs allege that "at least four (4) of Defendants' entities that directly collect Maryland consumers homeowner's association and condominium association fees and assessments are not licensed as a collection agency under the Maryland Collection Agency Licensing Act." *Id.* Consequently, Plaintiffs assert that "Defendants should be held in contempt of Court based on their collection of [pay-to-pay fees] while the entities they own that directly collect from consumers are unlicensed," and Plaintiffs contend that the "extent of Defendants['] violations of this Court's Settlement Order can only be determined after discovery." *Id.* at 3.

On January 15, 2025, Plaintiffs' counsel sent a letter to Defendants' counsel notifying them of Defendants' alleged noncompliance with the Settlement Order. ECF 32-1, at 4; ECF 32-2. On January 29, 2025, Defendants responded admitting that a total of four local property management companies owned by Defendants were unlicensed. ECF 32-1, at 4; ECF 32-3. On January 30, 2025, counsel conferred on the matter and Plaintiffs' counsel sent a follow-up email requesting certain information from Defendants, specifically (1) the names of the four entities in the process of getting licensed, (2) the date they become licensed, and (3) the amount of fees collected during the unlicensed period. ECF 32-1, at 5; ECF 32-4, at 1–4. Plaintiffs' counsel sent a second email to Defendants on February 28, 2025. ECF 32-4, at 1.

Defendants admit that after December 31, 2024, four of its "[b]ranches" experienced a lapse in licensure: HPS Management of Maryland, LLC ("HPS"), Sentry Management, Inc. ("Sentry"), Comsource Management, Inc. ("Comsource"), and Community Association Services,

3

Inc. ("CAS"). ECF 33, at 2; ECF 33-1, at 2–3 ¶ 5. However, Defendants contend in their January 15, 2025 filing that after learning about the lapses, they "immediately acted to ensure compliance" with the Settlement Order. *Id.* (emphasis omitted). Specifically, Defendants assert that "HPS's renewal application had been filed a couple of weeks prior (on January 2, 2025), Sentry's renewal application was filed on January 16, 2025 (the very next day), and Comsource and CAS filed their renewal applications within five and seven business days, respectively, of being alerted to the licensure lapse." ECF 33, at 3; 33-1, at 3 ¶ 7.

As of the filing of their opposition to Plaintiff's motion, Defendants report that "[t]hree out of the four Branches have since had their renewal applications approved and MCALA licenses renewed, and the only other Branch (Sentry) is still pending approval but has processed no fees during the MCALA licensure lapse period." ECF 33, at 2–3; ECF 33-1, at 3 ¶¶ 8–11. Defendants also offered the fact that the Maryland State Collection Agency Licensing Board (the "Board") meets only once per month to rule on pending applications as an explanation for why Sentry's application remained pending. ECF 33, at 3. Finally, Defendants report that to avoid such mishaps in the future, they have added "lapse mitigation procedures." *Id.* For example, instead of continuing with local, branch-level handling of licensure matters, "Defendants have installed dedicated, corporate-level personnel to oversee MCALA license renewal applications to prevent future lapse." *Id.*

In support of these statements documenting efforts Defendants have made to address licensing issues, Defendants provide the declaration of Andrea Torian, the Vice President of Legal for Associa, an entity that "owns certain Maryland-based property management companies, including the Defendants in this lawsuit." ECF 33-1, at 2 ¶¶ 1–3. Torian affirmed the statements asserted in Defendants' filings, ensured future compliance with the Settlement Order, and

promised that Defendants "will make every reasonable effort to prevent future MCALA licensure lapses." *Id.* at 4 ¶ 15.

## II. **LEGAL STANDARD**

"It is well-established that federal courts possess an inherent power to punish for contempt." *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 612 (D. Md. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Moreover, Federal Rule of Civil Procedure 70 governs the enforcement of a judgment for a specific act, and it provides that a court may hold a party that disobeys such a judgment in contempt. Fed. R. Civ. P. 70(e); *see also Columbia Gas Transmission Corp. v. Mangione Enters. of Turf Valley, L.P.*, 964 F. Supp. 199, 203 (D. Md. 1996).

"Civil contempt hearings employ a burden-shifting framework." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). "A party moving for civil contempt must show, by clear and convincing evidence '(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that [the] movant suffered harm as a result.'" *Trs. of Heating, Piping & Refrigeration Pension Fund v. Clean Air Mech., Inc.*, Civ. No. JKB-17-3690, 2021 WL 5760906 (D. Md. Dec. 3, 2021) (quoting *Commonwealth Constr. Co. v. Redding*, Civ. No. GLR-14-3568, 2016 WL 8671536, at *2 (D. Md. May 6, 2016)); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000). Willfulness is not an element of civil contempt. *See United States v. Westbrooks*, 780 F.3d 593, 596 n.3 (4th Cir. 2015).

"Once the movant establishes these elements, the burden shifts to the defendant to show 'good faith [in making] all reasonable efforts to comply with the enforcement order.'" *Klopp*, 957 F.3d at 461–62 (alteration in original) (quoting *United v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)). "A defendant who fails to meet this burden may be held in civil contempt." *Id.* at 462. A district

court's civil contempt order is reviewed for abuse of discretion. *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (citing *Ali*, 874 F.3d at 829).

## III. ANALYSIS

### A. Civil Contempt

Defendants do not appear to dispute that Plaintiffs have met the first, second, and fourth elements of the civil contempt test. This Court granted Plaintiffs' motion for final approval of class action settlement on December 10, 2024. *See* ECF 31. Defendants, a party to the final settlement, were undoubtedly aware of the Court's order. And Defendants admit they violated the terms of the Settlement Order by allowing some of the entities they own "that communicate directly with Maryland consumers regarding payment of their homeowner's association and condominium association fees and assessments" to become unlicensed under the MCALA. *See* ECF 31, at 3. Moreover, in light of those violations, Plaintiffs were denied "important and valuable injunctive relief." *See* ECF 31, at 3. The remaining disputes thus boil down to the following: (1) whether Plaintiffs have shown, by clear and convincing evidence, that Defendants had "at least constructive knowledge" of such violations, *Ali*, 874 F.3d at 831; (2) if so, whether Defendants can nevertheless raise a valid defense to civil contempt; and (3) if Defendants cannot, what remedy Plaintiffs are entitled to.

#### 1. Actual or Constructive Knowledge

As stated above, to be held in civil contempt, a defendant must have "had knowledge (at least constructive knowledge) of [their] violations" of the court order. *Ali*, 874 F.3d at 831 (quoting *Ashcraft*, 218 F.3d at 301). "'Constructive knowledge' is '[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'" *De Simone*, 36 F.4th at 529 (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)).

Defendants argue that "Plaintiffs have not proven a 'knowing violation' of the [Settlement] Order by clear and convincing evidence." ECF 33, at 2. Plaintiffs respond that "Defendants are presumed to know the status of their own license, and Maryland courts have routinely found knowing violations of MCALA's licensing requirement when a collection agency acts without the requisite license." ECF 34, at 2 (first citing *LVNV Funding LLC v. Finch*, 207 A.3d 202, 612 (Md. 2019); and then citing *Williams v. Ewrit Filings, LLC*, 268 A.3d 960 (Md. App. 2022)). Moreover, Plaintiffs point out that on November 12, 2024, the Maryland Office of Financial Regulation issued an Industry Advisory Regulatory Guidance reminding licensees to submit a renewal request no later than December 17, 2024. ECF 34, at 2–3.

Plaintiffs have shown by the requisite standard of proof that Defendants had at least constructive knowledge of the violations of the provision of the Settlement Order related to licensure lapse. In the exercise of "reasonable care or diligence," Defendants should have known that four of their branches were going to experience a lapse in licensure. *See De Simone*, 36 F.4th at 529. The Maryland Office of Financial Regulation's guidance to licensees, coupled with the notice Defendants had from the Settlement Order itself, which was approved on December 10, 2024—just one week prior to the apparent December 17, 2024 deadline for submitting a renewal request—should have informed Defendants of their impending lapses and related violations of the Settlement Order. In sum, the Court finds that Plaintiffs have satisfied their prima facie burden of showing all four elements for the imposition of civil contempt against Defendants.

2. Defenses to Contempt

"With that, the burden shifts to [Defendants] to set forth a valid defense for [their] violation" of the Settlement Order. *Schwartz*, 261 F. Supp. 3d at 615. Defendants attempt to meet their burden by arguing that they nevertheless substantially complied with the Settlement Order. *See* ECF 33, at 3.

7

"Substantial compliance with a decree is a defense to civil contempt." *De Simone*, 36 F.4th at 530. "To benefit from the substantial compliance defense, the violating party must show that it took all reasonable steps to ensure compliance." *Schwartz*, 261 F. Supp. 3d at 615 (citing *United States v. Darwin Const. Co.*, 873 F.2d 750, 755 (4th Cir. 1989)). "Importantly, inadvertent omissions are excused only if such reasonable steps were in fact taken." *Id.* The Fourth Circuit has also emphasized that it is not enough to take some reasonable steps to ensure compliance— Defendants must take "*all* reasonable steps." *De Simone*, 36 F.4th at 530 (emphasis in original).

Defendants argue that their "immediate actions *post-lapse* demonstrate substantial compliance with the [Settlement] Order." ECF 33, at 3 (emphasis added). Torian attests that on the same day she "received an email from the attorneys representing the Defendants in this lawsuit, informing [her] that the Maryland Collection Agency Licenses . . . for certain of Associa's Maryland-based companies may have lapsed," Associa "spoke with employees of each identified branch and was assured that each branch was investigating and actively working to complete the MCALA license renewal process." ECF 33-1, at 2–3 ¶¶ 5–6. "Associa made clear to them that MCALA licensure renewal should be their top priority." *Id.* at ¶ 6. Of the four branches whose licenses had lapsed, one—HPS—had already applied for renewal on January 2, 2025. ECF 33-1, at 3 ¶ 7. "Sentry applied for renewal of its MCALA license on January 16, 2025," one day after the communication from Plaintiffs, "Comsource applied for renewal on January 22, 2025," seven days after the communication from Plaintiffs, and "CAS applied for renewal on January 24, 2025," nine days after the communication from Plaintiffs. *Id.* at 3 ¶¶ 8–10. Torian affirms that HPS, CAS, and Comsource's renewal applications have been approved by the Board, although Sentry's

licensure was still pending at the time of the opposition's filing.[3] *Id.* at 3 ¶¶ 8–11. Moreover, Torian attests that during the period when HPS and Sentry's license lapsed, they "did not collect any fees for customer payments made through TownSq." *Id.* at 3 ¶ 12–13.

In addition to the steps detailed above, Torian attests that Defendants have added lapse mitigation procedures to prevent future violations of the Settlement Order. *Id.* at 3–4 ¶ 14. Instead of handling renewal applications on a local, branch-level basis, Torian says that Defendants have "implemented new procedures at the corporate level to prevent future inadvertent MCALA licensure lapses" and have now installed dedicated, corporate-level personnel to oversee MCALA license renewal. *See id.* For example, such corporate employees will be responsible for "contacting Maryland branches regarding MCALA license renewals sixty (60) days before the relevant renewal deadline and ensuring renewal applications are timely submitted." *Id.* at 3-4 ¶ 14. Torian further assures the Court that "Associa remains committed to complying" with the Settlement Order and "will make every reasonable effort to prevent future MCALA licensure lapses." *Id.* at 4 ¶ 15.

Certainly, Defendants took many reasonable steps *after* learning of the lapses to ensure compliance with the Settlement Order. But Defendants fail to explain the extent of the measures taken to comply with the Settlement Order after it was entered but prior to Plaintiffs' email informing them of the lapses. The Fourth Circuit previously affirmed a district court's conclusion that a defendant had not taken "all reasonable steps" to substantially comply with a court order where the defendant acted only "*after* it was notified" by another party that some of the ordered

---

[3] Torian notes that on February 12, 2025, HPS's renewal application was approved by the Board; on March 11, 2025, CAS's renewal application was approved by the Board; and on March 12, 2025, Comsource's renewal application was approved by the Board. ECF 33-1, at 3 ¶¶ 8–10.

9

actions associated with a summons were still incomplete. *Darwin Const. Co.*, 873 F.2d at 755 (emphasis in original); *see also United States v. Darwin Const. Co.*, 680 F. Supp. 739, 741 (D. Md. 1988) ("Darwin's efforts to achieve complete production between June 27 and June 30 do not transform its initial failure to make substantial compliance at the time of the first production."). Accordingly, the Court concludes that Defendants have not met their burden to explain why they, in good faith, took *all* reasonable steps to comply with the Settlement Order.

That being said, the Court appreciates Defendants' stated commitment to contacting its branches sixty days before the relevant renewal deadline, in addition to the other steps it has taken since learning of the lapses from Plaintiffs.[4] However, the Court observes that the Defendants have not represented that they instructed the branches that were in lapse to stop collecting fees at the time the lapses were learned of. And, as Plaintiffs point out, although Torian has attested that HPS and Sentry did not collect certain fees while their licenses had lapsed, the same declarations were not made with respect to CAS and Comsource. *See* ECF 34, at 4; *see generally* ECF 33-1. The Court is also concerned that Defendants have not shared any policies in place to stop its branches from collecting fees during any future periods of licensure lapse, if such periods occur. For those reasons, the Court rejects Defendants' defense of substantial compliance, and it holds Defendants in contempt for failure to comply with the Settlement Order.

### B.   Remedy and Request for Discovery

"The appropriate remedy for civil contempt is within the court's broad discretion." *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995). "However, the remedies and sanctions must be remedial and compensatory and, unlike criminal contempt, nonpunitive." *Id.* (citing *United*

---

[4] Maryland law provides that a license does not expire until a final action by the Board so long as the renewal application is filed two weeks prior to expiration. Md. Code Ann., State Government, § 10-226(b); ECF 34, at 3.

10

*States v. United Mine Workers of Am.*, 330 U.S. 258, 302–04 (1947)). Indeed, "[a] compensatory sanction . . . cannot 'exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding.'" *Schwartz*, 261 F. Supp. 3d at 617 (quoting *Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 447 (D. Md. 2015)). "While the moving party 'bears the burden of proving both the fact and the amount of its losses,' the amount of damages awarded in a contempt finding must only meet the preponderance of the evidence standard." *Id.* at 617 (quoting *In re Gen. Motors Corp.*, 110 F.3d 1003, 1016–18 (4th Cir. 1997)).

Plaintiffs do not request a particular remedy for Defendants' violation of the Settlement Agreement. Rather, Plaintiffs contend that "until Plaintiffs can discover[] the scope of Defendants' knowledge and the total [f]ees collected, this Court cannot fashion an appropriate remedy and Defendants could evade the full consequences of its actions." ECF 32-1, at 7. Plaintiffs ask to conduct discovery on three matters: "(1) the scope of non-licensure by Defendants' local property management companies, (2) Defendants' knowledge of the non-licensure, and (3) the total [f]ees collected by each of Defendants' local property management companies since January 1, 2025." *Id.*

It appears that "the status of each Branch's MCALA licensure is public information," as Defendants point out. ECF 33, at 4. Indeed, that is presumably how Plaintiffs were able to ascertain that certain entities did not have up-to-date licensure in the first place. *See* ECF 32-1, at 3. Accordingly, the Court does not see, at least on the record before it, why discovery is needed as to "the scope of non-licensure by Defendants' local property management companies." ECF 32-1, at 7. Moreover, Plaintiffs' fail to fully explain their request for discovery related to "Defendants' knowledge of the non-licensure" with respect to the issue of attorney's fees. *Id.* The

11

Court presumes that the inquiry is related to a potential request for attorney's fees, which a court traditionally "may assess . . . for willful disobedience of a court order." *De Simone*, 36 F.4th at 536 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)). However, the Fourth Circuit has also "affirmed an award of attorneys' fees" in the context of civil contempt "without finding willful disobedience," *id.* (citing *In re Gen. Motors*, 61 F.3d at 258–59). The Court is also mindful that authorizing discovery related to the Defendants' state of mind could quickly expand the scope of what is currently billed as a request for "limited" discovery. *See* ECF 32-1, at 7.

With respect to the issue of discovery on the fees collected by Defendant entities during the relevant periods of lapse, Plaintiffs posit that "[i]f, for instance, Defendants stopped collecting the [f]ees during the period of time its companies were not licensed, the remedy might be narrow. On the other hand, since Defendants know they are unlicensed, and if they continue to charge and collect the [f]ees, the remedy should be broader." ECF 32-1, at 6. Defendants argue "Plaintiffs have no right to discovery of 'total [f]ees collected by each of Defendants' local property management companies,' because those fees have no relevance whatsoever to any alleged actual harm Plaintiffs may have suffered." ECF 33, at 4. "[A]t most," Defendants contend, "Plaintiffs' loss would equal the fees processed by the four unlicensed Branches while they awaited MCALA license renewal—information already in Plaintiffs' possession." *Id.* at 5.

The Court has evaluated all arguments and will permit Plaintiffs to conduct limited discovery into whether the four branches that violated the Settlement Order—HPS, Sentry, Comsource, and CAS—collected fees during the time periods for which they were not licensed, including the total amount of fees collected. Once that limited discovery is completed, Plaintiffs are instructed request a specific remedy from the Court related to Defendants' Settlement Order

violations, to which Defendants will have an opportunity to respond. Plaintiffs should take care to explain how any proposed remedy is connected to harm suffered as a result of the violations and are reminded that such relief must be "remedial and compensatory and, unlike criminal contempt, nonpunitive." *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995).

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is granted in part and denied in part. The parties shall have fourteen (14) days from the filing of this opinion and the corresponding order to submit a timeline for the limited discovery described above to take place. Fourteen (14) days after such discovery is complete, Plaintiffs shall request a remedy from the Court in light of this opinion. Defendants will have an opportunity to respond to any remedy requested within ten (10) days of Plaintiffs' request.

A separate implementing order will issue.

Dated: October 20, 2025

/s/
Brendan A. Hurson
United States District Judge